## FRETWELL v. BRANYON.

MORTGAGE—MERGER—PARTNERSHIP.—A mortgage assigned to a member of a firm, paid for by firm, held by firm for some years, during which time the firm held the fee simple title to the mortgaged lands, payment of the mortgage being a part of the consideration for the land, is merged into the legal title, and assignee cannot enforce same.

Before WATTS, J., Abbeville, October, 1902. Affirmed.

Foreclosure by Joseph J. Fretwell against Davis S. Branyon, Sarah J. Martin, A. T. Armstrong and John Marion Ashley. From Circuit decree, plaintiff appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: *As to merger:* 20 Ency., 2 ed., 588, 590; 47 S. C., 305; 57 S. C., 182; Pom. Eq. Jur., sec. 798.

*Messrs. Frank P. Gary* and *Wm. P. Greene,* contra, cite: *As to merger:* 31 S. C., 404; 20 Ency., 2 ed., 991.

July 11, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. *Statement of facts.*—This is an action for the foreclosure of a mortgage executed by D. S. Branyon to M. McGee, on the 11th day of January, 1883, and assigned by McGee to the plaintiff on the 19th of April, 1886. The complaint alleges that the defendants, S. J. Martin, A. T. Armstrong and J. M. Ashley, have or claim some interest in the mortgaged premises junior to that of plaintiff.

The defendants, Sarah J. Martin and A. T. Armstrong, set up the followng defenses:

"I. For a first defense to the alleged cause of action of the plaintiff, these defendants say: That the said mortgage debt, alleged and set forth in the complaint, has been paid and satisfied in full.

"II. For a second defense to the plaintiff's alleged cause of action, these defendants say: That on the 21st day of

April, 1885, the defendant, Davis S. Branyon, was indebted to Bleckley, Brown & Fretwell, a partnership of Anderson, S. C., of whch the plaintiff was a member, on mortgage debts and other debts, in the amount of $2,221.87.

"III. That on the said 21st day of April, 1885, the defendant, Davis S. Branyon, had a fair and full settlement with the said partnership of Bleckley, Brown & Fretwell, of which partnership plaintiff was a member, in which settlement the said defendant, Branyon, agreed to convey, and did convey, to said parties composing the partnership aforesaid, the 200 acres of land described in the complaint herein at an agreed valuation of $2,215, the said partnership accepting said conveyance in satisfaction of $1,709.32 of their said debts against defendant, Branyon, and reserving thereof a sum sufficient to pay the mortgage debt of McGee, which mortgage debt is the subject of this action; that the balance of the mortgage and other debts of said Branyon to the said partnership of Bleckley, Brown & Fretwell was paid and satisfied on said 21st day of April, 1885, by a mortgage executed to them by the wife of said Branyon.

"IV. That thereafter the said Bleckley, Brown & Fretwell assigned to McGee the note and mortgage executed by the wife of said Branyon in exchange for the mortgage executed to the said McGee by defendant, Davis S. Branyon, referred to above, and which the said Bleckley, Brown & Fretwell agreed to pay; that by virtue of the agreement above set forth, the said mortgage executed by Davis S. Branyon to said McGee became extinguished and discharged; that the wife of said Branyon has since been compelled to pay to said McGee the note and mortgage executed by her to said Bleckley, Brown & Fretwell, and assigned to McGee as aforesaid.

"For a further defense to the plaintiff's alleged cause of action, these defendants say (after alleging the facts hereinbefore mentioned) :

"IX. That the said Bleckley, Brown & Fretwell, instead of having the note and mortgage executed by the said Davis

S. Branyon to said McGee, which mortgage is the subject of this action, marked satisfied, as they had agreed, had the same nominally assigned to J. J. Fretwell, the plaintiff herein; that notwithstanding such assignment, the consideration for same was paid by the said Bleckley, Brown & Fretwell, out of the moneys left with them by the said Branyon and wife to satisfy the same, and the said assignment was for the benefit of said Bleckley, Brown & Fretwell.

"X. That the defendants herein, on 3d day of September, 1888, purchased the land described in the complaint at sheriff's sale, under judgments in their favor duly entered against Davis S. Branyon prior to 21st day of April, 1885, the date of the conveyance to Bleckley, Brown & Fretwell; that these defendants purchased the said land in satisfaction of their judgment debts, believing that the said mortgage debt of McGee had been paid, or would be paid, by the said Bleckley, Brown & Fretwell, the said Bleckley, Brown & Fretwell having represented to these defendants that they had money in their hands of said Branyon to satisfy the same; that the assignment of said mortgage debt to said J. J. Fretwell under these facts, when the consideration was furnished by Bleckley, Brown & Fretwell out of the moneys left with them by Branyon and wife for the satisfaction of the said mortgage, was a fraud upon the rights of these defendants.

"For a further defense to the plaintiff's alleged cause of atcion, these defendants say:

"XI. That on the 21st day of April, 1885, the said defendant, Davis S. Branyon, being the owner in fee simple of the land described in the complaint, sold and conveyed to Bleckley, Brown & Fretwell, a partnership of Anderson, S. C., of which the plaintiff was a member, all his interest in said land.

"XII. That on the 19th day of April, 1886, when the said mortgage of McGee was assigned to said J. J. Fretwell, the said partnership, of which J. J. Fretwell was a member, having a one-third interest therein, was the owner of the legal title to said land; that the said mortgage became thereby

7—67

merged into the title of the said Bleckley, Brown & Fretwell, at least to the extent of the interest of said J. J. Fretwell, which was more than sufficient to satisfy said mortgage debt."

The decree of his Honor, the Circuit Judge, is as follows:

"This case having at a previous term of the Court been referred to the master to take the testimony, came on for a hearing before me on the pleadings and testimony so taken, at the October, 1902, term of the Court. After a consideration of the testimony and after argument of counsel, I find as matters of fact:

"1st. That on April 21st, 1885, Davis S. Branyon, being the owner in fee simple of the tract of land described in the complaint, conveyed the same to Bleckley, Brown & Fretwell, a partnership of Anderson, S. C., of which plaintiff was a member.

"2d. That at the date of said conveyance, S. A. McGee held the mortgage sued on in this action against the said Branyon.

"3d. That thereafter, on the 19th of April, 1886, the said mortgage of S. A. McGee was exchanged with the said firm of Bleckley, Brown & Fretwell for a mortgage held by the said firm against Mrs. N. C. Branyon.

"4th. That said exchange was made by the firm of Bleckley, Brown & Fretwell, the consideration therefor being paid by said firm, and the assignment being in fact made to them by the said S. A. McGee, although the same was nominally to J. J. Fretwell, the said exchange and assignment being sought and made by the said firm for the reason as told to McGee, that the said firm had bought the tract of land, and did not want any lien outstanding against it.

"5th. I find that Bleckley, Brown & Fretwell continued to hold and have possession of the note and mortgage here sued on from the date of said assignment up to the dissolution of the firm several years afterwards; that it was never in the possession of the plaintiff until after such dissolution.

"6th. I find that at the time of the said assignment by

McGee to Bleckley, Brown & Fretwell, there was no intention on the part of said firm to hold the mortgage open to protect the title which they had to the land.

"I, therefore, conclude as matter of law that upon the assignment of the said mortgage here sued on by McGee to Bleckley, Brown & Fretwell, nominally to J. J. Fretwell, a member of the said firm, and the mortgage being delivered to and kept by the said firm up to the dissolution, the same became merged into the fee simple title which they had to the land at the time of the said assignment, so as to let in the claims of defendants, Martin and Armstrong, who bought the land at sheriff's sale about 1890, under judgments procured against said Branyon, between the date of the execution of the said mortgage and the conveyance by said Branyon to said firm. I find that the mortgage is thereby satisfied in full. Under this finding and conclusion, I do not deem it necessary to consider the other defences set up by the answer of these two defendants.

"It is, therefore, ordered and adjudged, that the complaint herein be dismissed with costs."

The appellant's exceptions are as follows:

"I. Because his Honor erred in his fourth finding of fact, that the consideration of the transfer of the mortgage of S. A. McGee to J. J. Fretwell was paid by Bleckley, Brown & Fretwell, and that the assignment was in fact made to them, when the testimony shows that the asssignment was made to J. J. Fretwell individually, and that it was originally intended for his benefit, and that he accounted for the price of said mortgage in his final settlement with the firm.

"II.. Because his Honor erred in holding in his fifth finding of fact, that Bleckley, Brown & Fretwell continued to hold and have possession of said note and mortgage up to the time of the dissolution of said firm, and that it was never in the possession of the plaintiff; whereas, the plaintiff being a member of the firm, their possession was his possession, and the fact that the assignment was duly recorded, showing

the intention of the plaintiff and of the firm, that said note and mortgage was the property of the plaintiff.

"III. Because his Honor erred in his sixth finding of fact, 'that at the time of the said assignment by McGee to Bleckley, Brown & Fretwell, there was no intention on the part of said firm to hold the mortgage open to protect the title which they had to the land,' said finding of fact being erroneous in assuming that the transfer was made to Bleckley, Brown & Fretwell, when the assignment itself shows it was made to J. J. Fretwell; and said finding being also erroneous in finding as matter of fact that it was not the intention to keep said mortgage open to protect the title, the fact of the transfer being to J. J. Fretwell individually, and the fact of said transfer being recorded on the record of the mortgage in the register of mesne conveyance office for Abbeville County, on the 5th day of July, 1886, being conclusive evidence that it was the intention of all parties to keep said mortgage alive, and not let it merge.

"IV. Because his Honor having found as matter of fact that the firm of Bleckley, Brown & Fretwell continued to hold and have possession of the note and mortgage from the time of the transfer until the dissolution of said firm, it follows as a necessary sequence that said firm had the assignment to J. J. Fretwell put upon the record of said mortgage, thus showing beyond a doubt that it was their intention to keep the mortgage open and keep it from merging, and his Honor erred in holding that there was no intention of keeping the mortgage open to protect the title which they had to the land.

"V. Because his Honor erred in concluding as matter of law that the mortgage became merged in the title of Bleckley, Brown & Fretwell, and that it was satisfied in full; whereas, the correct rule of merger, as laid down by our Supreme Court, is that equity will prevent or permit a merger as will best subserve the purposes of justice, and the actual and just intention of the parties, and the testimony in this

case showing that the justice of the case was entirely with the plaintiff.

"VI. Because his Honor erred in finding and holding that the claim of the defendants was superior to that of the plaintiff, when it was alleged in the complaint and not denied in the answer, that the claim of the defendants was junior to that of the plaintiff.

"VII. Because his Honor erred in holding that the mortgage was merged in the title of Bleckley, Brown & Fretwell, when the claim of the defendants, as shown by their answer, did not claim that it was merged to a greater extent than one-third thereof.

"VIII. Because in any event, his Honor erred in holding that the whole mortgage was merged, when, according to the testimony, viewed in the most favorable light for the defendants, only one-third of said mortgage was merged.

"IX. Because J. J. Fretwell, individually, and the firm of Bleckley, Brown & Fretwell, a partnership, are entirely distinct and separate in law, and his Honor erred in holding that the doctrine of merger applied in such a case.

"X. Because this being an equity cause, his Honor erred in applying the doctrine of merger as a strict rule of law, but should have considered the equities of the parties, and applied the rule as laid down for equity causes, and according to the testimony in this case should have held that there was no merger, and decreed foreclosure of the mortgage in suit."

The respondents gave notice of the following additional grounds upon which they ask that the decree be sustained:

"I. That the mortgage debt here sued has been paid and satisfied in full.

"II. That on April 21st, 1885, the said Bleckley, Brown & Fretwell, of which firm appellant was a member, had a 'settlement' with Davis S. Branyon, in which settlement the said Branyon conveyed to said firm the tract of land in suit, the said firm agreeing to take such conveyance in satisfaction of their mortgage debts and the mortgage debt here sued on. That having agreed to pay the said McGee mortgage debt,

when the same came into the hands of said firm or a member thereof, the law presumes that it was paid, and the plaintiff cannot now maintain to the contrary.

"III. That in the settlement between Davis S. Branyon and Bleckley, Brown & Fretwell, Davis S. Branyon made and delivered to said firm his deed of conveyance to the tract of land in suit, which deed they accepted in satisfaction of their mortgage debts against him, and also in satisfaction of the McGee mortgage debt, here sued on, which they agreed to pay by the terms of the agreement made; that to indemnify the said firm in such payments, Mrs. N. C. Branyon made and delivered to them her mortgage deed in an amount sufficient to pay the mortgage of McGee; that said firm afterwards exchanged the N. C. Branyon mortgage debt with said McGee for the mortgage debt here sued on, assigning to said McGee the N. C. Branyon mortgage debt, and receiving in exchange the mortgage debt here sued on. The said N. C. Branyon mortgage debt was foreclosed against the land of said N. C. Branyon by the said McGee, or her assigns, and the same was fully paid, which transaction was tantamount to a payment of the mortgage debt here sued on by the said Branyon."

*Opinion.*—The two pivotal questions in this case are: 1. What was the consideration of the mortgage executed by Mrs. Branyon to Bleckley, Brown & Fretwell at the time the land was conveyed to them by her husband, D. S. Branyon? and 2. Did the plaintiff, by virtue of the assignment to him of the McGee mortgage, acquire rights that can be enforced in this action? The testimony bearing upon these questions is as follows:

A witness for the plaintiff, H. P. McGee, being duly sworn, says: "The mortgage and note which has been proved was at one time in my possession. I traded the mortgage and note for another mortgage on Mrs. Davis Branyon about fifteen years ago. The trade was with some member of the firm of Bleckley, Brown & Fretwell. I think it was Mr. Brown, and my recollection is that the Mrs. Davis Bran-

yon mortgage was assigned to me by them. I was told at the time that they had bought the property of Davis Branyon and that they did not like to have a mortgage over it, and they wanted to trade for the mortgage. Redirect examination: J. J. Fretwell was at that time a member of the firm of Bleckley, Brown & Fretwell. I presume the transfer was made to J. J. Fretwell by the request of the firm, it is so long ago that I am not sure how it was. The mortgage was assigned to me by Bleckley, Brown & Fretwell. I am not sure that I had the transaction with Mr. Brown or with Mr. Fretwell."

D. S. Branyon, being sworn in behalf of defendant, says: "I am the D. S. Branyon who owned the 200 acres of land in controversy. I had a settlement with Bleckley, Brown & Fretwell at my house. I went up to see Mr. Fretwell a day or two before the settlement and told him that maybe I could settle it, and he and Mr. Von Haslyn came down to my house. On that day I made the deed to them for the land and my wife executed a mortgage for $500. H. P. McGee held the first mortgage, I reckon, the one they are suing on here. Messrs. Bleckley, Brown & Fretwell held several mortgages against the land given by me. The mortgage was given by my wife to take up the McGee mortgage. They surrendered their mortgages to me and were to take up the McGee mortgage. I had a paper of a settlement, but I have looked diligently for it, but have not been able to find it. I have looked diligently at the place where I keep my papers and where I had it last, but could not find it. The paper shows the settlement between Bleckley, Brown & Fretwell and me. It showed that they were to take up the McGee mortgage, and I gave them a paper saying there was no other mortgage on the land. The mortgage my wife gave has been foreclosed, and there was a second mortgage given for some interest which had been left out of the first. Cross-examination: They were to give me for the land twenty-two hundred and some odd dollars and to take up the McGee mortgage. This agreement for sale of land was made on

21st April, 1885. I don't know exactly how much I owed them. My wife gave the mortgage to take up the McGee mortgage. I made the representation to them that there was no other mortgage against the land but the McGee mortgage, and gave a writing to that effect. I did not know of the judgments against me by my sister then. I told Mr. Fretwell that I had been sued, papers had been served on me, and he said he did not care. I said in the paper that there were no liens against it. I did not know that there was a judgment. Bleckley, Brown & Fretwell were to take up the McGee mortgage, and Mr. Fretwell wrote me that there was some interest which should have been added in and that I ought to settle it, and my wife gave a second mortgage to secure it, about $168 or $178, on same land she gave the other mortgages on. I owed Bleckley, Brown & Fretwell with the McGee mortgage twenty two hundred and some odd dollars. They were to have given me $10 per acre. They gave me up my papers. On what I owed them I got credit for seventeen hundred and some dollars besides the McGee mortgage. The papers were served on me in this suit and I did not answer. The papers directed me to appear at Court. I acknowledge service of the summons. To pay the $505 my wife executed a mortgage on the land. I owed Bleckley, Brown & Fretwell the $505, if they would take up the McGee mortgage to make the deed complete. They had to pay the McGee mortgage and they had my wife's mortgage to secure them. I did not know for five or six years that they had transferred the mortgage of my wife to McGee. I never went to Bleckley, Brown & Fretwell to ask them about the McGee mortgage. I thought they would foreclose it as soon as they got ready."

J. J. Fretwell, being duly sworn, says: "Bleckley, Brown & Fretwell, as I recollect, agreed to pay about $8.50 per acre. The deed states the amount agreed upon. Branyon represented that something over $500 was on the land in the Mc-Gee mortgage. Mrs. Branyon gave Bleckley, Brown & Fretwell a mortgage. I do not recollect whether she gave

it to cover the additional amount they owed or to cover the amount due on the McGee mortgage. Afterwards we bought the McGee note and mortgage bought by Mr. Brown or Mr. Brownlee in my name with a view of turning it over to me. He was acting for Bleckley, Brown & Fretwell. We swapped him a mortgage of Mrs. Branyon, and this mortgage was taken in settlement afterwards and charged against me. Are you the owner and holder of this mortgage? (Objected to as stating a conclusion of law.) I am. Not a dollar of this mortgage has ever been paid. There was no agreement by Bleckley, Brown & Fretwell to pay off the McGee mortgage, with Mr. Branyon. I have no recollection of giving Mr. Branyon any such paper. My recollection is that the paper I gave Mr. Branyon contained a statement of his indebtedness to us, which were surrendered to him at that time, he having given us a receipt stating that there were no liens or mortgages against this land, and then we gave up his indebtedness to us. Cross-examination: The firm of Bleckley, Brown & Fretwell has been dissolved, I can't say when. Been dissolved over five years, about ten years. I don't recollect if this mortgage was taken by me in the final settlement or not. The mortgage of Mrs. Branyon was exchanged by Bleckley, Brown & Fretwell for the McGee mortgage and was turned over to me some time afterwards, was taken with that view. The exchange was made with Bleckley, Brown & Fretwell by Mr. Brown or Mr. Brownlee, an employee. I don't remember how much Mr. Branyon owed us at the time of the settlement." .

J. H. Von Haslyn, being sworn, says: "I was present at Mr. Branyon's at the time the deed was made to Bleckley, Brown & Fretwell by D. S. Branyon. I drew the paper, the deed. There was no agreement made on that day that Bleckley, Brown & Fretwell should pay off the McGee mortgage. The firm was to give to Mr. Branyon $1,700, the exact amount that they were to give for the land was expressed in the deed. We knew about the McGee mortgage being on the land. Mr. Branyon so stated. We inquired

if there were any other liens against the land and Mr. Branyon said that the McGee mortgage was the only lien on the land, and a writing to that effect, in my handwriting, was signed by Mr. Branyon.   Cross-examination: We knew of the McGee mortgage, I do not know whether we would have paid more if the McGee mortgage had not been on it.   We bought the land subject to the McGee mortgage, expecting the land to stand for  the McGee mortgage.   I witnessed the assignment of the N. C. Branyon mortgage to H. P. McGee.   Bleckley, Brown & Fretwell paid $83, the difference between the Branyon mortgage and the McGee mortgage.   I don't know whether Mrs. Branyon paid back the $83 or not.   I saw the McGee mortgage after the assignment.   Bleckley, Brown & Fretwell held it until the dissolution, and then it was turned over to Mr. Fretwell.   I was book-keeper for Bleckley, Brown & Fretwell at that time."

The decision of the Supreme Court in *Bleckley* v. *Branyon,* 26 S. C., 424, 2 S. E., 319, which was introduced in evidence, contains the following statements: "On April 21, 1885, after the rendition of the judgments, the defendant, 'Branyon, conveyed by deed the tract of 200 acres to plaintiffs (mortgagees), subject to the mortgage of P. H. McGee and in satisfaction of $1,709.32 of plaintiffs' debt, the residue being secured by Branyon's wife.'   In this transaction (the plaintiffs expecting to have to pay the McGee mortgage) the land was estimated at the value of $2,215, whch was a fair and full price for the same."   Again: "On April 21, 1885, the mortgagor and mortgagee had a 'settlement,' the amount ascertained to be due upon the mortgage debts, including that of McGee, was ascertained, and 'in satisfaction' of the aggregate amount the mortgagor, Branyon, made an absolute and unconditional conveyance of the land mortgaged to the plaintiffs, mortgagees, which was recorded, and at the same time 'the plaintiffs delivered their said notes and mortgages to the said Branyon.' "

We are satisfied that the execution of the mortgage by Mrs. Branyon to Bleckley, Brown & Fretwell, when the land

was conveyed by D. S. Branyon, arose from the fact that McGee held a previous mortgage on the land, and that it was the intention of all the parties to the transaction that Bleckley, Brown & Fretwell should get a good and clear title. And as it was necessary to extinguish the McGee mortgage so as to accomplish that result, Mrs. Branyon executed her mortgage to secure payment of the amount which would have to be expended by Bleckley, Brown & Fretwell in order to satisfy that mortgage. This plaintiff, who was a member of said partnership, not only had constructive notice of said agreements, but we are satisfied he had actual notice thereof. When the McGee mortgage was assigned to J. J. Fretwell, the consideration was paid by the partnership. As the agreement between Bleckley, Brown & Fretwell and Mrs. Branyon was that they would extinguish the McGee mortgage, merger took place when they, being then the owners in fee of the land, acquired the legal title to the said mortgage. In 22 Enc. of Law, 93, it is said: "Personalty acquired by one or more members of the firm in their own name may, nevertheless, belong to the firm, where such was the understanding of all the partners, or where such personalty was purchased with the funds of the firm. In whatever way the title to partnership chattels is acquired, the entire legal and beneficial ownership is not in the partners individually, but in the partnership as such." Again, at the same page: "It is immaterial in equity whether the legal title to partnership personalty or realty stands in the name of a copartner or in the joint names of all, where the intent is to convey to the partnership. The possessor of such legal title will be deemed to hold such property in trust for the partnership purposes. The property is under such circumstances deemed to be that of the partnership, and as such subject to all its incidents, and a court of equity will deal with it as such." In 2 Pom. Eq. Jur., sec. 797, the author thus states the rule as to merger: "The encumbrance cannot be prevented from merging by an assignment taken directly to the owner himself or to a third person as trustee. * * * This

rule also applies to the grantee of the mortgagor who takes a conveyance of the land subject to the mortgage, and expressly agrees and promises to pay it as a part of the consideration. He is thereby made the principal debtor and the land is the primary fund for payment. If he pays off the mortgage, it is extinguished." This language is quoted with approval in *Fowler* v. *Wood,* 31 S. C., 398, 10 S. E., 98. These conclusions practically dispose of all the exceptions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.